## WILLIAM FOWLER *vs.* JOHN A. JOHNSON.

### January 3, 1880.

**Mortgage on Single Parcel—Foreclosure for Instalment.**—Where there is a mortgage, containing a power of sale, upon only one tract or parcel of land, to secure a debt payable in instalments, the mortgagee may foreclose upon any instalment coming due, but such foreclosure exhausts the lien of the mortgage upon the land sold. The same land can be sold but once under the same mortgage. There can be a second sale to satisfy a subsequent instalment, only when there remains land not sold at the first sale.

**Same—Application of Surplus in Excess of Instalment then Due.**—Where a mortgage payable in instalments authorized the mortgagee, in case of default in principal or interest, "to sell the hereby-granted premises, at public auction, and convey the same to the purchaser in fee simple, agreeably to the statute in such case made and provided, and out of the moneys arising from such sale to retain the principal and interest which shall then be due on the said notes, together with all costs and charges, and pay the overplus, if any, to the said parties of the first part," and, one instalment being payable, the mortgagee foreclosed under the power, and, there being but one tract, sold the entire mortgaged property for a sum more than enough to pay such instalment, and costs and charges, *held*, that he might apply the overplus towards paying the instalments not yet payable.

Appeal by plaintiff from a judgment of the district court for Washington county, *Crosby,* J., presiding.

*James N. & Ira W. Castle,* for appellant.

*McCluer & Marsh,* for respondent.

GILFILLAN, C. J. On the first day of February, 1877, the plaintiff, with his wife, executed to George Woodward a mortgage upon real estate, consisting of but one tract of land, to secure two promissory notes, one for $1,000, due February 1, 1881, and the other for $1,500, due February 1, 1882, and bearing interest at the rate of 12 per cent. per annum, payable annually. It contained the usual power authorizing the mortgagee, in case of default in the principal or interest, "to sell the hereby-granted premises at public auction, and convey the same to the purchaser in fee simple, agreeably to the statute in such case made and provided, and, out of the

moneys arising from such sale, to retain the principal and interest which shall then be due on the said notes, together with all costs and charges, and pay the overplus, if any, to the said parties of the first part."

The mortgage was duly recorded, and, there being $600 due for interest on the notes, the mortgagee, under the power, foreclosed the mortgage, claiming that amount to be due in his notice of sale. The premises were sold by the defendant, sheriff of the county, as one tract or parcel, for the price of $3,171, being $2,500 in excess of the interest due, and costs and charges; and defendant paid the whole amount to the mortgagee, the entire principal of the notes being until then unpaid. This action is brought to recover the $2,500. The plaintiff claims that, as the mortgage authorizes the mortgagee, in case of sale under the power, to retain, from the moneys arising on the sale, only the principal and interest then due, (that is, then payable,) and costs and charges, and provides that the surplus shall be paid to the mortgagor, the $2,500 ought to be paid to him.

We make no question that a party executing a mortgage may make it security for anything he pleases—for the entire principal and interest of the debt, or for the principal alone, or the interest alone, or only for a part of the principal, or a part of the interest; and it may be assumed that in a mortgage executed to secure the entire debt, principal and interest, it may be stipulated that if the mortgagee shall exercise his right to foreclose under the power, when only a part of the debt—say an instalment or instalments of interest—is due, the mortgage shall cease to be security for the remainder, and shall be reduced to a security only for the amount then due. But we must say that the intention to provide for a result so extraordinary, so contrary to the expressed general purpose of the mortgage, and so apparently without adequate motive, should be expressed clearly and unmistakably, and so that no other interpretation consistent with the general purpose of the mortgage would be admissible.

Whether plaintiff's claim, that on this foreclosure there should have been paid to the mortgagee only the part of the debt then due and payable by the terms of the notes, with the costs and charges of sale, and the remainder to the mortgagor, would have the effect to cut down the mortgage to security merely for the amount then due and payable, depends on the effect of the sale on the mortgage. If there still remained the right to enforce the mortgage, for the remainder of the debt, it would not be cut down. But if that sale, the entire mortgaged property having been sold, exhausted the security, then the claim of plaintiff would reduce the mortgage, in the case of a foreclosure before the entire debt became payable, to security merely for the amount then payable.

*Watkins* v. *Hackett*, 20 Minn. 106, is cited as deciding that a sale under the power, to satisfy one instalment, leaves the lien of the mortgage for the subsequent instalments unimpaired, from which it would follow that the mortgagee, on the subsequent instalments coming due, might, in order to satisfy them, sell again the same land previously sold to satisfy the first. That case went upon the theory that each of the instalments is a separate and independent mortgage, subject to the equal lien of all the other instalments, there being no preference between them. At the time the mortgage in that case was executed, of the two sections (Gen. St. *c*. 81, §§ 3, 4) now controlling such mortgages, section 3 only was in force, and was the only section which the court in that case did or could consider. That section, standing alone, has a very different effect from what it has when taken in connection with section 4, which is in some respects the interpreter of section 3. Both sections were in force when the mortgage here involved was executed. Both entered into and controlled this power of sale, and both must be considered together in arriving at the rule in such cases.

Section 3 reads: "When a mortgage is given to secure the payment of money by instalments, each of the instalments,

either of principal or interest, mentioned in such mortgage, may be taken and deemed to be a separate and independent mortgage; and such mortgage for each of such instalments may be foreclosed in the same manner, and with the like effect, as if such separate mortgage was given for each of such subsequent instalments; and a redemption of any such sale by the mortgagor shall have the like effect as if the sale for such instalments had been made upon an independent prior mortgage."

Section 4 reads: "In such case, if the mortgaged premises consist of separate and distinct farms or tracts, only such tract or tracts shall be sold as are sufficient to satisfy the instalment or instalments then due, with interest and costs of sale; but if such premises do not consist of such separate and distinct farms or tracts, the whole shall be sold; and, in either case, the proceeds of such sale shall, after satisfying the interest, portion or instalment of the principal due, with interest and costs of sale, be applied toward the payment of the residue of the sum secured by said mortgage, and not due and payable at the time of such sale; and if such residue does not bear interest, such application shall be made with a rebate of the legal interest for the time during which such residue shall not be due and payable, and the surplus, if any, shall be paid to the mortgagor, his legal representatives or assigns."

Section 3 gives a right of foreclosure when an instalment, and not the whole debt, is due, the same as though such instalment were a separate and independent mortgage. In the absence of any provision qualifying this right, or indicating how it should be exercised, or the effect of its exercise, it might be that a sale to satisfy the lien of one instalment would not affect the right to sell the same property again, to satisfy the lien of a subsequent one; in which case the sale would be only on account of the instalment for which it was made, and the surplus, after paying the instalment, costs and charges, be properly payable to the mortgagor, as in case of

an independent mortgage. Section 4, however, contemplates successive sales for different instalments, only where the property mortgaged consists of separate and distinct farms or tracts, and a sale of all of them is not required to satisfy the amount due on the mortgage at the time of the first sale; and it also contemplates that whether the first sale be of a part or of the whole property, the entire interest mortgaged in a distinct and separate tract shall be sold, and that the sale, although made when only an instalment is due, is made on account of the entire mortgage. The direction that, upon such a sale, whether a part only or the whole of the mortgaged property be sold, the proceeds of the sale shall, after satisfying the interest, portion, or instalment of principal due, with interest and costs of sale, "be applied toward the payment of the residue of the sum secured by said mortgage, and not due and payable at the time of such sale," and that only the surplus, after paying the entire mortgage debt, shall be paid to the mortgagor, with a direction for rebate where such residue does not bear interest, shows this.

The rule here laid down is the same as a court of equity would apply in case of foreclosure by suit, and has the same reason for it, to wit: that, by the sale, the lien of the mortgage upon the tract sold, both for the part of the debt then due and payable, and for the residue, is exhausted, and the lien transferred to the fund arising from the sale. Why, upon the foreclosure of a mortgage, should any part of the proceeds be applied to satisfy another separate and independent mortgage, the lien of which is no way affected by the foreclosure? The direction to apply the surplus towards payment of the part of the mortgage debt not yet due can be only on the theory that the sale does affect the lien as to such part, does remove it from the land sold, and leave the mortgagee only the surplus of the fund raised by the sale, to look to for payment of the part of the debt not yet payable.

Our conclusion is that, under a power of sale in a mortgage, payable in instalments, there can be but one sale of the

same tract; that such sale, although made when only a part of the mortgage debt is due, is made on account of the entire mortgage, and exhausts its lien; and that the proceeds of the sale must be applied, *first*, toward satisfaction of the amount then due on the mortgage debt, and costs of sale; *second*, if there be a surplus, to the part of the mortgage debt not then payable; and, *third*, if there be then any surplus, it is to be paid to the mortgagor; so that the security of this mortgagee, as against the land mortgaged, is gone, and he must look to the fund made by the sale. If, out of this, he can receive only the amount due and payable at the time of the sale, and the overplus must be paid to the mortgagor, then his security is cut down to security for the amount then due, and is lost to him as to the residue.

The parties to the mortgage surely never intended any such result. Although the word "due" in the clause of the mortgage, "and out of the moneys arising from such sale to retain the principal and interest which shall then be due on said notes, together with all costs and charges, and pay the overplus, if any, to the said parties of the first part," etc., is usually employed in the sense of "payable," it is also sometimes used in the sense of "owing," without reference to a time of payment; and as, in the former sense, it would be inconsistent with the general purpose of the mortgage, to wit, security of the whole debt, principal and interest, and might, in part, defeat such purpose, and, in the latter sense, is entirely consistent with such general purpose, and also with the rule in courts of equity, and with the statutory rule, the latter must be taken as the sense in which the parties used it.

Judgment affirmed.

NOTE. This case was reargued at the April term, 1880, and on September, 13, 1880, the following order was made: "Upon the reargument of this cause, ordered that the decision made on the first argument be adhered to."