CURTIS et al. v. CUTLER.

(Circuit Court of Appeals, Eighth Circuit. September 14, 1896.)

No. 728.

1. FORECLOSURE SALE—REDEMPTION.
   Under the Minnesota law, the effect of a redemption by lienholders from a foreclosure sale under a prior mortgage is to vest in them the title to the premises, discharged of the lien of the mortgage.

2. ASSIGNMENT OF MORTGAGE—VALIDITY.
   An assignment of a mortgage without the insertion therein of the name of an assignee is nugatory, and leaves the legal title and the right to foreclose in the mortgagee.

3. SAME—MORTGAGEE'S RIGHT TO FORECLOSE.
   An agreement between an investment company and one to whom it sold certain mortgages that it should "attend to all matters of foreclosure and collection of the mortgage," with a recital that such person "expected them to take entire charge of the collection of this mortgage and any foreclosure proceedings that they should deem necessary," authorizes the company to bring such proceedings without further communication with such person.

4. SAME—EFFECT ON LIEN.
   The foreclosure and sale of mortgaged premises for a part of the mortgage debt exhausts the lien of the mortgage, and the purchaser at the foreclosure sale and creditors holding liens who redeem from him take the property entirely discharged from the mortgage, under the laws of Minnesota.

Appeal from the Circuit Court of the United States for the District of Minnesota.

Suit by Isaac M. Cutler against Eugene T. Curtis and another to foreclose a mortgage. From a decree in favor of plaintiff, defendants appeal.

Selden Bacon, for appellants.

Harlan P. Roberts (J. C. Sweet was with him on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree of foreclosure. On December 20, 1889, Peter J. E. Clementson and his wife mortgaged a part of a city block in Minneapolis, in the state of

Minnesota, to the Lombard Investment Company, a corporation of the state of Missouri, to secure the payment of two notes, one for $8,000, payable January 1, 1895, and one for $400, payable January 1, 1891, with interest at the rate of 6 per cent. per annum, payable semiannually, according to the terms of coupons attached to the two principal notes. The Lombard Investment Company had its principal office at Kansas City, in the state of Missouri; but it had a branch office in Boston, in the state of Massachusetts. This company wrote upon the back of the notes its assignment and guaranty of the payment thereof, and acknowledged and executed a formal assignment of the mortgage, in all of which the name of the assignee was left blank, and sent these writings, with the notes and the mortgage, to its Boston office. On February 10, 1890, Isaac M. Cutler, the appellee, bought the notes of the Lombard Company, and they and the assignment in blank were delivered to him a few days later. The mortgagors never paid anything upon the notes, but the Lombard Company paid to Cutler the $400 note and the coupons as they fell due, until January, 1894, when it became insolvent. On March 1, 1891, the Lombard Company took possession of the mortgaged property, under an agreement with the mortgagors to collect the rents from it, and to apply them to the payment of the mortgage debt. On July 15, 1891, the appellants, Eugene T. Curtis and Artemas H. Wheeler, obtained a judgment against the mortgagor, Clementson, which was from that time a lien on the mortgaged premises, subject to the mortgage. On September 8, 1892, the mortgage was foreclosed by advertisement, in the name of the Lombard Company, for the failure of the mortgagors to pay the note for $400 and the accrued interest upon both notes. The mortgaged premises were sold under this foreclosure for $1,732.13, and were conveyed by a proper sheriff's certificate to the Lombard Company, which was the bidder and purchaser at the sale. On September 19, 1893, the appellants, as subsequent lienholders, redeemed the mortgaged property from this sale, and the sheriff conveyed it to them by a proper certificate.

The legal effect of these proceedings, under the repeated decisions of the highest judicial tribunal of the state of Minnesota, was to vest the title to the mortgaged premises in the appellants, discharged of the lien of the mortgage. The sale of the mortgage debt, without a valid assignment of the mortgage, left the legal title to the latter in the mortgagee. In that state of facts, the mortgagee, the Lombard Company, was an indispensable party to a valid foreclosure of the mortgage by advertisement, and it was regularly and legally foreclosed in its name. That company held the legal title to the mortgage, and the power to foreclose it; and, if the owner of the mortgage debt authorized or permitted it to do so, the foreclosure was conclusive upon him. Bottineau v. Insurance Co., 31 Minn. 125, 127, 16 N. W. 849; Carpenter v. Bank, 44 Minn. 521, 523, 47 N. W. 150; Bausman v. Faue, 45 Minn. 412, 419, 48 N. W. 13; Solberg v. Wright, 33 Minn. 224, 226, 22 N. W. 381. A deed or an assignment of a mortgage, in which there was no name of a grantee inserted, is, until some name is therein written, as ineffective, as a conveyance or an assign-

ment, as a piece of blank paper. Drury v. Foster, 2 Wall. 24, 33; Swartz v. Ballou, 47 Iowa, 188, 193; Burns v. Lynde, 6 Allen, 305, 311; 1 Devl. Deeds, § 456. The foreclosure and sale of mortgaged premises for a part of the mortgage debt exhausts the lien of the mortgage, and the purchaser at the foreclosure sale, and creditors holding liens, who redeem from him, take the property entirely discharged from the mortgage. Fowler v. Johnson, 26 Minn. 338, 3 N. W. 986, and 6 N. W. 486; Martin v. Sprague, 29 Minn. 53, 58, 11 N. W. 143.

In January, 1893, the appellee brought this suit to foreclose this mortgage again for the unpaid balance due on the $8,000 note, and he seeks to escape from the inevitable effects of the rules of law, to which we have adverted, on two grounds: First. He insists that the mortgage was assigned to him before the foreclosure sale of September 8, 1892, took place. Second. He claims that the Lombard Company had no authority or permission from him to foreclose the mortgage.

The maintenance of the first proposition depends entirely upon the answer which the evidence gives to the question: Had the name of the grantee been inserted in the assignment of the mortgage on or before September 8, 1892, when the foreclosure sale was made? If it had not been, the legal title to the mortgage was then still in the Lombard Company, and the foreclosure was right and regular. If it had been, the title had vested in Cutler, and the foreclosure should have been made in his name. The testimony on this issue is uncontradicted, and it permits but one conclusion. It is that when the assignment was sent from Kansas City, where it was executed by the Lombard Company, to Boston, where it was delivered to Cutler, the name of the grantee was blank. It is that the name was blank in it when it was delivered to Cutler, and that the invariable custom of the Boston office was to deliver the assignments of the mortgages, which the company sold, without inserting therein the names of the assignees, unless the purchasers expressly requested the insertion of their names, and that no such request was made in this case. It is that the Lombard Company wrote to Cutler on October 10, 1892, two months after the foreclosure sale, that it wished for the assignment; that on October 18, 1892, he delivered it back to that company at its Boston office; that the officers there sent it to the Kansas City office; that it was then delivered to D. H. Ettien and T. H. Hull, the attorneys of the Lombard Company, who, on December 24, 1892, caused it to be recorded in the register's office at Minneapolis. That is the day on which the name of a grantee first appears in this assignment, according to the evidence in this record. Cutler and all to whose possession the assignment was traced from the time when it was delivered by the Kansas City office to the Boston office, with the name of the assignee blank, until it was delivered to the attorneys of the Lombard Company, at some time after October 18, 1892, were carefully examined, and testified that they did not insert the name of the grantee in the assignment, and that they did not know the handwriting in which it was inserted. There is but one conclusion that can be justly drawn from this evidence. It is that the name of the grantee was not inserted in this instrument until after it came into the

hands of the attorneys of the Lombard Company, in the latter part of October, 1892, more than two months after the foreclosure sale. This conclusion is irresistible, both as a matter of fact and as a matter of law. The inference is conclusive, as a matter of fact, because the testimony is uncontradicted that there was no name of any grantee in the assignment when it was delivered to Cutler, and that no one to whose hands it was traced inserted it, or knew of its insertion or existence in the instrument thereafter, before it was presented to the register, on December 24, 1892. It is conclusive as a matter of law, because the condition of an instrument once proved to exist is presumed to continue until a modification or addition is proved. As the name of the grantee was blank when the assignment was delivered to Cutler, it must be presumed that it continued blank until its insertion was proved by its appearance in the assignment when it was filed for record, on December 24, 1892. There was, therefore, no assignment of the mortgage before the foreclosure sale of September 8, 1892; and the foreclosure by advertisement was regularly and properly made in the name of the mortgagee, who appeared of record to hold, and in fact did hold, the legal title.

The second position of the appellee is that he held the beneficial interest in the mortgage by virtue of his ownership of the debt; that the Lombard Company held the legal title for his benefit; that it could not lawfully foreclose the mortgage without his authority or permission; and that the foreclosure is void, because he never gave any such authority or permission. Let it be conceded that this mortgage could not be lawfully foreclosed without the authority or permission of the appellee; was not that permission and authority given? Cutler was a large investor with the Lombard Company, and owned a good many of its loans. To prove that he did not authorize or permit this foreclosure, he testified that he never knew of the default of the mortgagors in their payments in this case, or of the foreclosure of the mortgage by advertisement, or of the redemption by the appellants, or of the commencement of this very suit by himself to foreclose this mortgage again, until December, 1893, about 10 months after this second foreclosure proceeding was commenced, when he was notified that his testimony was desired in this case by the attorneys of the Lombard Company, who had conducted both foreclosure proceedings, and were then prosecuting this suit in his name, without ever having consulted him concerning any of these proceedings. This testimony forcibly suggests the question, why had he never heard of any of these proceedings? Why did he respond to the request of these attorneys of the Lombard Company, give his testimony, press this suit which they had commenced without his knowledge, and express no astonishment at any of their acts? There is but one explanation of this course of action. It is that he had authorized and requested the Lombard Company to attend to all his business relative to the loans he bought of them, to keep the property insured, to keep the taxes upon it paid, and to enforce collection of the principal and interest upon his loans, by foreclosure of the mortgages or otherwise, without annoying him with the details of the proceedings, and that the company had agreed to do so, and was doing so. The action of

Cutler and the company was natural and reasonable, when read in the light of such an agreement, while it is irrational and unaccountable on any other theory.   On January 10, 1894, when this matter was first called to his attention, he testified that this was the agreement and understanding between him and the company.   When he was so testifying, more than 10 months after this suit had been commenced, in his name and without his knowledge, by the same attorneys who had the year before foreclosed this mortgage by advertisement, he said:

"Q. 196. Did you employ those Western attorneys to bring this suit of foreclosure of this mortgage? A. No, sir; no further than there was an understanding and an agreement between the Lombard Investment Company and myself that they would attend to my business. Q. 197. When was that agreement entered into? A. When I bought the mortgage. Q. 198. Now, as I understand you, at the time you bought the mortgage from the Lombard Investment Company, it was understood between you and that company that they would attend to all matters of foreclosure and collection of the mortgage? A. Yes, sir; and in addition that they should look after the taxes and insurance. * * * Q. 204. You expected them, did you not, to take entire charge of the collection of this mortgage and any foreclosure proceedings that they should deem necessary? A. I did at that time; yes, sir. I supposed they would take charge of the mortgage."

It is true that upon resuming the taking of testimony, after an intermission, and after possible advice that the testimony he had given was fatal to his case, he came before the notary, and said:

"I desire to correct the answer to Q. 196 by saying that I do not remember that the word 'foreclosure' was ever used. There was an understanding that they should look after the taxes and insurance, and attend to the collections, and look after my interests generally. The Lombard Investment Company didn't mention foreclosure when they were selling mortgages. I didn't think they would undertake any foreclosure without notifying me. They might or might not."

It is also true that his counsel thought it necessary to recall him on July 12, 1894, six months later, and to attempt again to break the force of this clear and positive testimony by the following examination:

"Q. 37. I call your attention, Mr. Cutler, to the question number 196 and answer, question number 197 and answer, and question number 198 and answer, in your evidence given before Mr. Stevens last January. I notice that you state that there was an agreement between the Lombard Investment Company and yourself that they would attend to your business. Now, I want you to explain what you mean by that statement. A. That agreement was their guaranty. They guarantied to me to collect and pay my coupons at maturity, and they guarantied to pay me the mortgages at maturity if they were paid. Q. 38. What guaranty do you refer to? A. It is written on the paper. Q. 39. On what paper? A. It is on the bond. Q. 40. Had you any further agreement with that company? A. I had no conversation with them on the subject of any other agreement. Q. 41. State whether or not you had any conversation with anybody connected with the Lombard Investment Company at the time you purchased the mortgages, or prior thereto, relating to the foreclosure of mortgages purchased by you. A. No, sir."

But the testimony of Mr. Cutler six months before, when the question was first presented to him, before the fatal effect of the whole truth had been explained to him, before an older age and a keener appreciation of the necessities of his case and of his own interest had

so clouded his memory that he had forgotten the agreement and understanding that was so clear to him in the January before, is much the more reliable. and by far the more convincing evidence. Moreover, the acts of the parties demonstrate that it was true. Cutler left the mortgage in the name of the Lombard Company, and put a blank assignment of it in his safe. Why did he do this, if it was not to enable that company to use it, in its own name and at its own discretion, for the collection of the debt? He testified that he should have recorded it if the company had advised him to do so. Why would he have acted on the advice of his vendor if he had not intrusted the entire management of the business relative to the collection and handling of this mortgage to it? On October 10, 1892, the Lombard Company wrote him that its Western office desired the assignment to assist in the collection of delinquencies, and he immediately delivered it back to the company. Why did he surrender his assignment to his grantor if it was not his agent to collect the delinquencies and enforce the payment of the debt? The attorneys of that company caused Mr. Cutler's name to be written in the assignment, and recorded it, and the appellee now counts upon these acts as his own in this very suit. The attorneys of that company brought this suit in his name without notice to him, and he still affirms that act, and presses the suit to a decree. On June 2, 1893, the Lombard Company presented to him for his signature a long letter directed to itself, which in terms authorized it to collect this mortgage by foreclosure or otherwise, and offered to it three propositions for the repayment of the loan evidenced by the mortgage, and he signed and delivered back to the company this letter as the company had written it. After these written propositions had been made, and this written authority to foreclose this mortgage had been given to the Lombard Company, that company took from the sheriff, through the hands of the attorney of record of this appellee in this suit, the $1,-868.55 redemption money paid to him by these appellants; and neither Cutler nor his agent, the Lombard Company, has ever offered to restore it to them. During the continuance of this loan, the Lombard Company procured for Cutler, and delivered to him, seven insurance policies upon this mortgaged property, two on January 25, 1890, two on March 13, 1890, one on March 26, 1891, one on February 15, 1891, and one on February 21, 1891. The written guaranty required this company to procure no insurance for Cutler. It required none of the proceedings in his behalf to which we have referred, and they were all without authority if Cutler's first testimony was false. It was true. These acts of the parties confirm that testimony, and show that both parties proceeded upon the theory that the entire care and management of the mortgage debt and its collection were intrusted to the Lombard Company from the time Cutler bought it until that company became insolvent, in 1893. He left the legal title in it, and kept the blank assignment until the company asked for it, and then he at once surrendered it. He signed any letter to the company that it suggested. He took any insurance which the company procured for him. He acted through that company and its attorneys in every move that he made about the mortgage debt or the mortgage, until

after the company was insolvent; and he never attempted to repudiate any act of the company or its attorneys, except the first foreclosure of the mortgage, and this he did, not of his own motion, but under the direction of the very attorneys who had conducted that foreclosure, and who, without his knowledge and as his agents, had commenced this suit to repudiate their former foreclosure, on the very same authority from him which they had to make that foreclosure. The conclusion is irresistible from these transactions and the positive testimony of Cutler on his first examination that the Lombard Company was not only permitted and empowered by Cutler to conduct this foreclosure, but that the agreement between them was that the company should attend to this business for him, that it should "attend to all matters of foreclosure and collection of the mortgage," and that he "expected them to take entire charge of the collection of this mortgage and any foreclosure proceedings that they should deem necessary," as he no doubt truthfully testified when his memory was fresh and unclouded, and his mind uninfluenced by the fear of personal loss.

One cannot read this record without an abiding conviction that this suit and the entire controversy it evidences have arisen from an attempt of the attorneys of the Lombard Company to escape from the effect of the first foreclosure they conducted. They seem to have become dissatisfied with the amount for which they purchased the property at the foreclosure sale, and then it was that they sent for Cutler's assignment, caused its blank to be filled, recorded it, and undertook in his name to repudiate and avoid a foreclosure, which they had the same authority from him to make that they had from him to avoid. They commenced this suit in his name, and kept it suspended over the appellants until their time for redemption expired, possibly to be dismissed if the appellants failed to redeem, and to be pressed if they redeemed. Suppose that the appellants had failed to redeem; suppose that the title had vested in the Lombard Company under the foreclosure by advertisement, and these attorneys of the Lombard Company had then dismissed this suit, which they had brought in Cutler's name, and insisted that the first foreclosure was valid and for his benefit, as they certainly might have done; how far could the appellants have gone in the face of the testimony in this case in proving that foreclosure to have been without the permission and authority of Cutler? They could not have maintained such a claim for a moment, and yet its maintenance would have been indispensable to the preservation of their lien if they had not redeemed. This was the alternative presented to them when their right to redeem was expiring. If they would preserve any claim upon this property, they must either neglect to redeem and prove this foreclosure void, or redeem and maintain its validity. They took the latter alternative, in the belief that the foreclosure in the name of the Lombard Company was permitted and authorized by Cutler. The testimony now shows that their faith was well founded. They redeemed. The attorney of record of the appellee in this suit took their redemption money, and paid it over to the Lombard Company, which was at that time, both orally and in writing, authorized by

Cutler to collect his debt, and foreclose this mortgage. The appellee stands here to-day with this money thus obtained still in the hands of his authorized agent, and asks this court to take this property from the appellants, and permit his agent to retain their redemption money. His claim is not sustained by the evidence, and it is not equitable.

The decree below must be reversed, with costs, and the case must be remanded, with directions to dismiss the bill; and it is so ordered.