## NYE TOOL & MACHINE WORKS v. CROWN DIE & TOOL CO.

(Circuit Court of Appeals, Seventh Circuit. April 24, 1923. Rehearing Denied September 20, 1923.)

### No. 3153.

1. **Patents ⬩328—1,058,711, for a cut-back die thread machine, claims 1 and 2, held invalid as too broad.**

   The Beck patent, No. 1,058,711, for a cut-back die thread machine, *held* invalid as too broad in view of the prior art.

2. **Patents ⬩157(1)—Title of patent cannot distinguish invention from another.**

   The title given a patent cannot be used to distinguish the invention from another but may only be considered to clarify or give significance to the language used in describing the individual elements.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Crown Die & Tool Company against the Nye Tool & Machine Works. Decree for complainant, and defendant appeals. Reversed, with direction to dismiss bill.

Russell Wiles, of Chicago, Ill., for appellant.
Florence King, of Chicago, Ill., for appellee.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. [1] Claims 1 and 2 of patent No. 1,058,711 were sustained by the District Court; hence this appeal. They relate to a "cut-back die thread machine," concerning which the patentee says:

"This invention relates to improvements in die thread cut-back machines; that is to say, milling or cutting back die teeth in order that, when in operation, they may freely discharge their cuttings, an operation which is not only objectionably expensive, but obviously inaccurate as compared with that possible and practical by means of a machine uniformly, as must be, cutting back the tooth in a die.

"The object of my invention, broadly stated, is a construction and arrangement of devices which may be mounted upon the bed plate of any ordinary and commonly used drill press, which will serve to hold and present to a mechanically revolved cutter a die, the teeth of which must be milled or cut back prior to its use and in such a manner as to insure a rapid and uniform cutting back of the teeth in every operating cutter tooth of such a die.

"More specifically stated, the object of my invention is a device in which the teeth of a cutting die may be used as a means for securing the die in its operative position relative to a milling cutter, revolved about a fixed axis, and in such a manner that the several cutters of the die may be shifted to operative engagement alternately with a revolving cutter, and locked against possible accidental movement during the milling of the die teeth."

Claims 1 and 2 read:

"1. A die thread cut-back machine comprising in combination a holder for the die, a milling cutter above said holder, means for actuating said cutter, and means for adjusting the several cutters of a die thereto.

"2. A die thread cut-back machine comprising in combination a die support, a revolving milling cutter in a plane above said support, and means for shifting the support to bring the several cutters of the die successively in operative contact with each set of teeth in the milling cutter, substantially as described."

Invalidity of both claims, in view of the prior art, is the defense.

The patent in question was issued to appellee, assignee of Edward E. Beck, upon application filed December 1, 1911. Prior to this date, patent No. 845,741, entitled "Mechanism for Finishing Screw-Threading Die," was issued to appellant, as Beck's assignee. Beck was employed by appellant, and while so employed, on April 20, 1908, made application for another patent upon an "improvement in mechanism for forming screw-threading dies," and assigned this application to appellant. Thereafter Beck left appellant's employ and organized appellee. The last-named application was brought into interference with a pending application of R. P. Wright and F. W. Hubbard, who prevailed, and the Beck application was abandoned.

Appellant's position, briefly stated, is that the exact subject-matter of the two broad claims here involved was invented by Beck while working for defendant; that the assignment of this application to appellant presents a complete defense to the two claims; and, moreover, the Wright and Hubbard patent is a complete anticipation. If appellant is correct in its facts, then the decree should be for the appellant. If, on the other hand, neither the Wright and Hubbard patent, nor the invention represented by the Beck abandoned application, is an anticipation, then the decree should be affirmed, unless, of course, the claims can be so narrowly construed as to avoid infringement.

It therefore becomes necessary to examine both the file wrapper of the abandoned Beck application and the Wright and Hubbard patent. Applicant particularly calls our attention to claim 12 of the Beck abandoned application, at the time it was placed in interference with the Wright and Hubbard application, and to claim 16 of such Wright and Hubbard patent. These two claims are identical and read:

"12. In a machine for serrating the thread-forming cutters of screw-threading dies, the combination of a circular cutter formed with peripheral cutter blades and mounted to rotate in a stationary bearing, a stationary supporting base arranged in adjacent relation to said cutter, a work carrier mounted on said base, and having rotary and rectilinear movements upon and along its axis of revolution, the axis of revolution of the cutter and carrier being in separated relation, and means for imparting movement to the carrier longitudinal to its axis and coequal to the pitch distance of the teeth to be cut in a full revolution of the carrier."

Claims 1 and 2 of the patent in suit are extremely broad. Not only does the language admit of no narrow or limited construction, but the other seven claims of this patent confirm this conclusion. The Patent Office must have considered the invention as a pioneer, for it is doubtful if a broader claim than No. 1 could have been drawn, save by striking out the word "above." If the claim had read "a machine for making dies," its allowance at the date of the application could not have been justified. Neither could a machine for making "cut-back dies" have been the proper subject of a claim. It was only the combination of elements constituting the machine that was the legitimate subject of a claim, and no such claim should have been allowed, unless there was disclosed a new arrangement of old elements, or there was introduced a new element in an old combination. It is true the claim covers a

combination, but the four elements (aside from the use of the word above) are no more specific than the term "a die thread cut-back machine."

One can hardly escape the conclusion that Wright and Hubbard, and also Beck, entertained the belief that the art in die-making machines had progressed to the point where broad and generic claims, such as Nos. 1 and 2 of the patent in suit, were not legally obtainable. As a result, we find the Beck patent, No. 845,741, the Beck application, serial No. 427,963, and the Wright and Hubbard patent, No. 1,033,142, all preceding the patent in suit, without any such broad claim being incorporated. It was after these applications had been filed that the solicitor for Beck finally asked for and secured claims 1 and 2.

The Patent Office never cited the prior art represented by the aforementioned patent, and this fact is suggested as justifiable reason for distinguishing them. But the answer to this contention is they should have been cited, and failure to do so was doubtless due to their being in interference at the time.

Analyzing the first claim of the patent in suit, we find four elements, all described as broadly as possible: (a) A holder for the die; (b) a milling cutter above said holder; (c) means for actuating said cutter; (d) means for adjusting the several cutters of a die thereto. The only word of limitation in any of the four elements is "above" in element (b), which, of course, relatively places the milling cutter and the holder.

But an examination of claim 16 of the Wright and Hubbard patent shows the same relative position of these two elements.

Referring to this claim, we find a combination with each of these four elements present. Element (a) of claim 1 is the "work carrier." True, the work carrier in claim 16 is more specifically described, but it is element (a). Element (b) in claim 1 is represented by "a circular cutter formed with peripheral cutter plane and mounted to rotate in a stationary bearing, a stationary bearing supporting base arranged in adjacent relation to said cutter." The language limiting the work carrier in claim 16 disposes of any alleged differentiation because of the use of the word "above." Element (c) in claim 1 is "the circular cutter mounted to rotate in a stationary bearing." Element (d) is "the work carrier having rotary and rectilinear movements upon and along its axis of revolution, the axis of revolution of the cutter and carrier being in separated relation, etc."

[2] Some effort has been made by counsel for appellee to distinguish the two patents because of their difference in name. It is claimed that one covers a "cut-back die thread machine," while the other is for a "machine for serrating the thread-forming cutters of screw-threading dies." It is not the title that interests us, but rather the elements in the combination that go to make up the claim. Courts cannot place premiums upon tongue-twisting combinations of words that merely evidence the ingenuity and acuteness of a linguistic gymnast. All the patents under consideration cover combination claims, and the most that the preliminary words can accomplish is to clarify or give significance to the language used in describing the individual elements. Schram Glass Mfg. Co. v. H. Brooke Glass Co., 249 Fed. 228, 161 C. C. A. 264.

Nor do we think the alleged distinction, stressed by appellee's counsel, that one machine operates upon a die block that has been threaded, while the other machine takes an unthreaded block, is entitled to any significance, so far as these two claims are concerned. There may be invention in appellee's structure. This we need not determine. We are merely interested in the two first claims, which do not cover the advance which appellee may properly claim. We conclude that both claims 1 and 2 are invalid.

The judgment is reversed, with direction to dismiss the bill.