## GALION METALLIC VAULT CO. v. EDWARD G. BUDD MFG. CO.

### No. 9497.

Circuit Court of Appeals, Third Circuit.

Argued April 5, 1948.

Decided June 30, 1948.

Writ of Certiorari Denied Nov. 8, 1948.

See 69 S.Ct. 132.

H. A. Toulmin, Jr., of Dayton, Ohio (Pepper, Bodine & Stokes, of Philadelphia, Pa., Toulmin & Toulmin, of Dayton, Ohio, Harold Scott Baile, of Philadelphia, Pa., and Herbert H. Brown and Clayton E. Crafts, both of Dayton, Ohio, on the brief), for plaintiff-appellant.

Charles H. Howson, of Philadelphia, Pa. (Howson & Howson, Dexter N. Shaw, and Charles H. Howson, Jr., all of Philadelphia, Pa., on the brief), for defendant-appellee.

Before GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

There are two patents involved in this matter. The first is for a compartment or space in an automobile truck between the chassis and the body platform for holding a spare tire or tires. The second is for a support to which the tire is anchored in a horizontal position in that comprtment and by which it can be swung down to a vertical position along the side of the truck. The court below found both patents invalid for lack of invention. There was also a finding of misuse of the patents.

The lack of invention as to the compartment is predicated principally upon the prior publication in Cooper's Vehicle Journal of January, 1922 of a hawkers' lorry having a locker in the same area as appellant's compartment and upon the disclosure and public use of mine safety trucks which carried three oxygen cylinders in the space utilized by appellant for its tire holder.

■ Appellant's compartment invention is No. 1603095 issued October 12, 1926 to Kissel Motor Car Co. of Hartford, Wisconsin, as assignee of Herman D. Palmer. It was acquired by appellant in 1938. Its title is "Pneumatic-Tire Carrier for Automobile Trucks." It is not a separate construction but is formed by a combination of parts in an automobile truck. The space between the forward end of the floor or loading platform of an ordinary truck and its supporting frame is utilized to provide a relatively flat box like space adapted to completely enclose one or more tires. The space is obtained by cutting away the ends of the longitudinal body sills.[1]

The hawkers' lorry shows a built-in locker just forward of the rear wheel, extending to the back of the cab and lying between the bottom of the lorry floor and the tops of the longitudinal chassis rails or sills. There is a similar locker behind the rear wheel and extending almost to the back of the lorry. The forward locker is located substantially at the same point as the Palmer compartment. Space for the locker is obtained by reducing the height of the longitudinal sills throughout their length. The locker is used for the hawker's

---

[1] Appellant relies solely on claim one of its patent which reads:

"1. In an automobile truck, the combination with a chassis frame, a load-carrying platform, means for supporting said platform above and in spaced relation to the chassis frame including a pair of longitudinal supporting members adapted to be mounted upon the chassis frame, and means forming a compartment beneath said platform for receiving pneumatic tires, said longitudinal members being cut away at their forward ends to receive the lower portion of said compartment."

scales, measures and other "equipment necessary for trading purposes." In order to carry a tire, the box would have to be somewhat widened, which could be accomplished by spacing the transverse bolsters further apart. This, under the evidence, was no extraordinary feat in body building, the District Court calling it "a routine matter."

The mine safety trucks were used by both the United States Bureau of Mines and the Bureau of Mines of the State of Ohio long prior to the Palmer patent. These had a space forward of the rear wheel and between the platform and the chassis in which three oxygen cylinders were carried. The longitudinal sills were notched and the front cross bolsters were spaced a greater distance apart than the others in order to accomodate the cylinders.

The court below found that the carrying of "equipment necessary for trading purposes" in the lorry locker was so closely analogous to carrying a spare tire that the non-mention of the latter "does not matter." It found that the narrowing of the longitudinal supports in the lorry served the same purpose as cutting away their front ends in the Palmer patent. It found further that the whole idea of cutting away or notching the supports was fully disclosed in the Ohio mine rescue cars.

The question of invention is generally regarded as one of fact, and what we said recently in White v. E. L. Bruce Co., 162 F.2d 304, 305, applies with at least equal force to the present situation, namely, that it is "certainly not an instance in which we can say that the result reached by the learned District Judge was clearly erroneous * * *." The record here discloses ample support for the holding that the hawkers' lorry and the mine safety trucks anticipated the spacing of the transverse members and the cutting away of the longitudinals, maintained by appellant to be the distinctive characteristics of the Palmer patent.

The District Court found Palmer's "suggestion that a spare tire be carried at the place which it indicates is new." The result so obtained is evidence of invention (Loom Co. v. Higgins, 105 U.S. 580, 26

L.Ed. 1177) but to achieve patentability it must "not only new but, we think, patentably new in view of the art * * *." Julius Levine Co. v. Automatic Paper Machinery Co., 3 Cir., 63 F.2d 547, 549. Nor will the fact that the new device is also useful make it automatically patentable. Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 90, 62 S.Ct. 42, 86 L.Ed. 65.

Appellant asserts that the Palmer patent attained immediate commercial success. It concedes this argument is only available if there is doubt as to patentability. Radiator Specialty Co. v. Buhot, 3 Cir., 39 F.2d 373, 376. And that is not the status of this patent under the holding of the court below. In addition, examination of the record reveals the claimed success to be doubtful. The patent, dated 1925, was sold in 1938 for $500. That year one of appellant's witnesses said it was "the sensation" of the Cleveland road show. However, there is nothing to show the sale of a single truck body because of the Palmer compartment. During the last war that sort of carriage of tires became standard with army trucks, but that would be merely some evidence of patentability. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721.

Appellant also contends in connection with the Palmer patent that the Gillespie patent No. 1320131 was before the Patent Office when the Palmer patent was allowed. It is said that the Gillespie patent shows the same structure as the lorry and the mine cars and that it was rejected as a reference because it showed a tool box and not a tire box. Therefore it is argued that the lorry and the safety mine car, *which were not before the Patent Office,* should have no decisive bearing on the instant problem. However, the Patent Office decision was in reality quite different, for in view of the Gillespie patent the only claims allowed Palmer were those which embraced references to the cutting away of the longitudinal supports. Those supports are nowhere mentioned in the Gillespie patent. Indeed, the spare tire in the Gillespie truck, which was designed for loads of exception-

al length, is shown stowed forward of the body and behind the cab. There is nothing to warrant the assumption of a prima facie case for validity of the Palmer patent through disregard by the Patent Office of the prior art. Artcraft Silk Hosiery Mills v. Gotham Co., 3 Cir., 72 F.2d 47, 48.

■ The second patent under consideration, for a tire support or carrier, is Biszantz No. 2146107, and, again, sole reliance is placed upon the first claim.[2] The District Court held that this was anticipated by Groden Patent No. 2063092, saying that "the Groden tire carrier is applicable without alteration to the structure of the Palmer patent and that the choice of that type of slidable carrier for use with Palmer's structure which is all that Biszantz's first claim calls for, is not an act of invention."

Appellant points out as a vital difference between the two tire carriers that Groden is placed at the rear of the car whereas Biszantz is between the frame and the body. This seems no valid distinction and no real attempt to refute the finding that the Groden carrier is immediately applicable to the Palmer structure. At best it offers no substantial reason for setting aside the finding that the Biszantz patent is invalid for lack of invention. Nor is there any other reason advanced by appellant regarding this patent which would lead us to such conclusion.

Though our views on the validity issues dispose of this appeal we consider the question of appellant's misuse of the patents of sufficient inportance to rule on it. Pyrene Mfg. Co. v. Urquhart, 3 Cir., 168 F.2d 310. The District Court found that the claims to both patents were not limited to the truck body and therefore that appellant's practice in connection with the patents was misuse. Appellant admits that it offers competing body manufacturers "a license to use Plaintiff's patents in constructing their truck bodies." Those truck bodies

are not patented. The assertion that the Palmer claim was confined to the truck body is not tenable. The claim itself carefully states that the patent is a combination of a load carrying platform with a chassis frame in an automobile truck. It is insisted that references to the truck and the chassis "were mere orientation or background to define the use of the body on the truck." That statement is hardly acceptable from either a reading of the claim or from the other proofs. The chassis frame has uniformly been used as the bottom of the tire carrier or compartment. Two sketches are submitted purporting to show how the tire could be suspended from the under-side of the loading platform by bolts and brackets, thus eliminating the chassis support. There is no evidence that such use was ever really contemplated and, having the purposes of the patent in mind, the drawings themselves indicate the assumed arrangements to be unusual and impractical.

It is obvious that the Biszantz patent is not limited to the truck body. This does not seem to be seriously questioned by appellant. The patent, it is remembered, consists of an adjustable tire support and is actually mounted on the truck chassis.

■ Appellant's practice in connection with these patents is not excused, as is argued, by the decision in Williams Mfg. Co. v. United Shoe Machinery Corporation, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537, which is not applicable to the circumstances before us. The controlling doctrine is that stated by Mr. Justice Brandeis for the Supreme Court in Leitch Co. v. Barber Co., 302 U.S. 458, 463, 58 S.Ct. 288, 290, 82 L.Ed. 371, where he said, "* * * every use of a patent as a means of obtaining a limited monopoly of unpatented material is prohibited. It applies whether the patent be for a machine, a product, or a process. It applies whatever the nature of the device by which the owner of the patent

[2] The first claim reads:
"1. In combination, a truck frame, a body, means located between said frame and body to form a compartment, supplementary means slidable into and out of said compartment for supporting articles therein in pre-determined position, and

means associated with said compartment for retaining said supplementary means in a horizontal position when in the compartment and in a vertical position when out of the compartment, and means to lock said supplementary means within the compartment as desired."

seeks to effect such unauthorized extension of the monopoly." And see the Mercoid cases, Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Mercoid Corp. v. Minneapolis-Honeywell Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396.

The judgment of the District Court will be affirmed.