PARK–IN THEATRES, Inc. v. PARA-
MOUNT–RICHARDS THEATRES,
Inc., et al.

Civ. A. No. 1072.

United States District Court
D. Delaware.

May 8, 1950.

See, also, D.C., 90 F.Supp. 727.

Arthur G. Connolly, of Wilmington, Del., Richardson Dilworth and Leonard L. Kalish, of Philadelphia, Pa., for plaintiff.

William S. Potter and James L. Latchum (Southerland, Berl & Potter), of Wilmington, Del., Charles R. Fenwick and Thomas B. Van Poole (Mason, Fenwick & Lawrence), of Washington, D. C., and Gibbons Burke of New Orleans, La., for defendants.

RODNEY, District Judge.

The general nature and broad factual basis of this action is stated in the opinion of this court reported in 81 F.Supp. 466.

This opinion is concerned with the motions of defendants, Paramount-Richards Theatres, Inc., Paramount-Richards Enterprises, Inc., and Kennington-Richards Enterprises, Inc., (1) for summary judgment, under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., as to the first and fourth causes of action of the amended complaint, (2) to dismiss the third cause of action under Rule 12(b) (6), and (3) to strike certain paragraphs of the amended complaint as to the first and third causes of action.

The original complaint alleged two causes of action; one was for an accounting for royalties under a patent license agreement and the second and alternative cause of action was based upon alleged patent infringement, in case the defendants should claim that their actions had not been pursuant to the license agreement. Certain defendants moved to dismiss the complaint under Rule 12(b) (6), on the ground that the license agreement contained provisions in violation of public policy, with the legal consequence that it was unenforceable and royalties could not be recovered upon the agreement and with the further consequence that a patent infringement action could not be maintained, because of misuse of the patent. This motion was argued before the court, and in its opinion, reported in D.C., 81 F.Supp. 466, it held that there was incorporated by reference in the license agreement a provision which was claimed to be in violation of the public policy established by the antitrust laws. Action on the motion was deferred so that the parties might have an opportunity to present facts to the court which might or might not have the effect of bringing this case squarely within the factual framework of the cases of National Lockwasher Co. v. George K. Garrett Co., 3 Cir., 1943, 137 F.2d 255, and McCullough v. Kammerer Corp., 9 Cir., 1948, 166 F.2d 759, certiorari denied, 335 U.S. 813, 69 S.Ct. 30, 93 L.Ed. 368, which were held to be generally controlling here.

Thereafter defendants filed certain affidavits tending to show the existence of competitive theatres of the same general type as those which were the subject matter of plaintiff's patent and the license agreement in suit. These affidavits were filed in connection with a motion for summary judgment based on the same contentions as the original motion to dismiss.

Before this motion for summary judgment was disposed of, plaintiff filed its amended complaint. In its opinion dated July 13, 1949 this court held that the

amended complaint had been properly filed, and that the pending motion for summary judgment based upon the original complaint must fall.[1] Thereafter defendants renewed the motions for summary judgment and to dismiss with reference to the amended complaint which will be more particularly considered here.

The motion for summary judgment is directed to what are denominated the first and fourth causes of action of the amended complaint. These causes of action are, respectively, for recovery of royalties under the license agreement which was involved in the original complaint and alternatively for patent infringement. The motion to dismiss is directed to the third cause of action which is based upon the alleged failure of defendants to exploit the patent invention in suit in accordance with the agreement of the parties. These motions and the motions to strike will be taken up in order.

### Motion for Summary Judgment on First Cause of Action of Amended Complaint

Defendants contend that summary judgment should be granted in their favor with respect to the first cause of action of the amended complaint, because that cause of action simply restates the first cause of action of the original complaint, in lengthier form, and seeks to recover royalties upon the license agreement, which is, it is said, unenforceable because it is in violation of public policy under the principle of the Lockwasher and McCullough cases.

■ In the previous opinion, reported in D.C., 81 F.Supp. 466, it was held that paragraph 3 of a form of a license agreement[2] was fully incorporated by reference into the agreement of November 20, 1940, and that the agreement in question would therefore be unenforceable, if certain facts were shown to exist. Plaintiff now contends that the amended complaint shows that the form of license agreement (Exhibit 3-A to the amended complaint) was never in fact executed, and that the understanding of the parties was contained in the agreement of November 20, 1940 (Exhibit 3), as demonstrated by the subsequent conduct of the parties. It argues from this that neither paragraph 3 nor any other part of the form of the license agreement was ever binding on the parties or ever became a part of the existing agreement, and furthermore that it should be given an opportunity to introduce evidence at the trial with respect to the understanding of the parties. I am unable to agree that these new allegations can alter the previous conclusion that paragraph 3 of Exhibit 3-A was an existing part of the agreement of November 20, 1940. The fact that license agreements in the form of Exhibit 3-A were not subsequently executed by these parties is immaterial on this point as its terms were already incorporated by reference in Exhibit 3 and were binding on the parties. It is also clear that the introduction of evidence to show that the understanding of the parties was different from what it appeared to be on the face of the formal written contract, there being no ambiguity, would be a violation of the parol evidence rule. The plain terms of the contract could not be varied by any such evidence or by these allegations of the amended complaint.

■ Plaintiff also seeks to escape from this court's previous conclusion by alleging that the term "drive-in theatre" was coined by R. M. Hollingshead, Jr., the original patentee of the patent involved in this suit, and that it means only the particular type of outdoor theatre invented by him. This allegation, as far as it concerns the interpretation to be given to the term when it appears in paragraph 3 of Exhibit 3-A, is merely a conclusion of the pleader and does not in any way affect the court's previous opinion that the term is generic.[3]

---

1. 9 F.R.D. 267.

2. Paragraph 3 of the form of a license agreement was as follows: "Licensee covenants and agrees that it will not either directly or indirectly promote or aid the making, construction, use or operation of any drive-in theatre not licensed by Licensor."

3. Differences with respect to conclusions do not raise issues of fact. See Dickheiser

I conclude, therefore, that there is nothing in the amended complaint which requires a departure from the earlier ruling, provided that it was correct to say that this case is controlled by the Lockwasher case, and if the factual situation warrants the application of the principles set out in that case.

Plaintiff now argues strenuously that the decision of the Lockwasher case is not properly applicable to this case. Since the plaintiff distinguishes the Lockwasher case upon a basis not heretofore raised, such distinction must be more particularly considered. It is urged that the distinction exists in the nature of the patent license which in the Lockwasher case was a nonexclusive license and in the present case is an exclusive one. Plaintiff argues that an exclusive patent licensee is under an implied obligation to exploit the patented device in good faith and to refrain from the use of competing devices; that the exclusive license being given in consideration of royalties, the failure to exploit or use the device and the inability of the patentee to license others would result in no royalties and consequent loss to the patentee unless or until he moves to rescind the exclusive license because of nonuser. For this may be cited the cases found in the footnote.[4]

From this the plaintiff argues that since the defendant as exclusive licensee was under an obligation to exploit the patented device in good faith and to refrain from the use of competing devices, then an express agreement by the exclusive licensee to the same effect cannot be in violation of public policy.

There are here presented questions concerning the rights and liabilities of an exclusive licensee and the applicability of the same principles to an exclusive licensee for a patented article and to an exclusive licensee for a matter not covered by a patent.

There can be no doubt that in certain cases not involving a patent monopoly contracts can, and do, provide for an exclusive agency of a stated article and an express agreement not to engage in the promotion of a competing article. Of such nature are some automobile agency contracts,[5] and as to other matters the principle is typified in this circuit by Brosious v. Pepsi-Cola Co., 3 Cir., 155 F.2d 99. This latter case is strongly relied upon by the plaintiff as being applicable here rather than the Lockwasher case. The Brosious case was entirely different from the Lockwasher case. It was purely a suit under the antitrust laws involving questions of interstate commerce, restraint of trade and conspiracy. No question of a possible misuse of a patent monopoly was involved and it is not apparent that the principles of the Lockwasher case were considered as having any application. The learned judge who wrote the opinion in the Lockwasher case also participated in the later Brosious case and no mention was made of the former. The Lockwasher case was followed in McCullough v. Kammerer Corp., 9 Cir. 1948, 166 F.2d 759, and applied to a case of an exclusive license.

Upon a careful consideration of the opinion of the Court of Appeals in the Lockwasher case, I do not consider it necessary now to decide whether an exclusive patent licensee is or ever was under an implied obligation to exploit the patent or, if there is such an implied obligation, what its extent may be. It is not necessary to decide whether any implied obligation of an exclusive patent licensee to exploit does more than create a correlative right in the licen-

---

v. Pennsylvania R. Co., D.C., 5 F.R.D. 5, affirmed on opinion below, 155 P.2d 266, certiorari denied 329 U.S. 808, 67 S.Ct. 620, 91 L.Ed. 689.

4. Crowe v. Oscar Barnett Foundry Co., D.C., 213 F. 864, slightly modified and affirmed, 3 Cir., 219 F. 450; Matzka Corporation v. Kelly Dry-Pure Juice Corp., 19 Del.Ch. 359, 168 A. 70;

Guardino Tank Processing Corp. v. Olsson, Sup., 89 N.Y.S.2d 691; Brawley v. Crosby Research Foundation, 73 Cal. App.2d 103, 166 P.2d 392; De Stubner v. Microid Process, 121 W.Va. 773, 6 S.E.2d 777.

5. Kane v. Chrysler Corp., D.C., 80 F.Supp. 360.

sor to rescind the contract in case of violation of such duty to exploit.[6]

Although it does not clearly appear from the opinion in the Lockwasher case that the licenses there involved were nonexclusive, an examination of the record of the case shows that such was the fact. The plaintiff, therefore, is correct in suggesting that in that case there was no question of an implied obligation upon the licensees to refrain from using competing devices, or of a justification of the express agreement not to use competing devices based upon the theory that such a covenant would constitute a reasonable consideration for the patentee's grant of the right to exploit the patent within a given territory free from competition from other licensees or the patentee himself. The Court of Appeals, however, seems not to have reached its decision upon the ground that the license agreements contained covenants tending to suppress competition without there being anything in the relationship between the licensor and licensees to justify those covenants, but rather upon the ground that it was the use of the patent monopoly to suppress competition which made the patentee's conduct inequitable and rendered the license agreements unenforceable. Certain brief excerpts from the Circuit Court's opinion will be sufficient to indicate the emphasis which the court put upon this aspect of the matter:

" * * * The patentee in this case is not selling any unpatented goods under a tying-in clause to the licensee. But it is, as the facts are alleged by the defendant, using its patent monopoly to suppress the manufacture of possible competing goods not covered by its patent. * * * A patentee's right does not extend to the use of the patent to purge the market of competing non-patented goods except, of course, through the process of fair competition." [7]

" * * * The patentee has disentitled itself to recover at present for infringement by reason of its utilization of its patent monopoly to drive unpatented competing goods from the market." [8]

Such being the basis for the Circuit Court's decision in that case, no reason is apparent for distinguishing it from the present case upon the ground that the present case involves an exclusive license rather than a nonexclusive license. I feel compelled by the decision in the Lockwasher case, which is, of course, binding upon this court, to hold that, if the necessary facts are present, the covenant with which we are here concerned is in violation of public policy, and that the license agreement is therefore unenforceable.

In the Lockwasher case the Court of Appeals for this Circuit held that the patentee could not recover for infringement of the patent because it had issued licenses containing restrictive provisions analogous to the provision involved in this suit. In so holding it said: "It is not disputed that there are other forms of unpatented non-tangling spring washers than those involved in the Loutrel patent. So what we have here, assuming the facts as above stated, is a patentee who gives a license to a manufacturer for a stipulated consideration, part of the consideration being that the licensee will abstain from manufacturing any other kind of non-tangling spring washer except those covered by the license." [9]

Defendants have filed affidavits showing the existence of open air drive-in motion picture theatres which they contend evidences the existence of potential competition equivalent to that present in the Lockwasher case. Plaintiff argues on the other

---

6. It appears that in England such an implied obligation is not recognized at all. See Halsbury's Laws of England (Hailsham Ed.), Patents, Sec. 1338. In Mechanical Ice Tray Corp. v. General Motors Corp., 2 Cir., 144 F.2d 720, it is questioned whether that part of a former implied obligation which involves refraining from entering into competition has survived in a practical sense the decision in Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376.

7. At page 256 of 137 F.2d.

8. At page 257 of 137 F.2d.

9. 137 F.2d at page 256.

hand that there must be a showing of substantial competition in order to show prejudice to the public interest by its removal or restriction, and that the amended complaint and an affidavit filed on plaintiff's behalf show that, while other types of outdoor drive-in theatres exist, they are not substantially competitive with theatres constructed in accordance with plaintiff's patent and, in fact, have been generally unsuccessful in their operations. It is plaintiff's position that there is thus at least an issue of material fact on this point which precludes the court from awarding summary judgment.

In my opinion the principle of the Lockwasher case requires no more than that there should be in existence potential competition which may be restricted or suppressed by what is deemed to be an improper use of the patent monopoly.[10] There is no question but that other types of open air drive-in theatres are and have been in existence for some time. The fact that none of them are located within competitive distance of theatres constructed in accordance with the principles of plaintiff's patent or that they cannot or probably will not successfully compete with such theatres is immaterial. It is sufficiently demonstrated by the undisputed facts that other types of open air drive-in theatres which do not infringe the plaintiff's patent can be constructed and operated, and it is the tendency of the restrictive covenant in the agreement with which this suit is concerned to restrain potential competition from other noninfringing types of drive-in theatres that brings it in conflict with public policy.

It is my conclusion, therefore, that this case, as far as the first cause of action is concerned, falls within the operation of the principles of the Lockwasher case. Before passing finally on this motion for summary judgment, however, consideration must be given to plaintiff's contention that it has purged itself of the patent misuse and is consequently no longer barred from recovery of royalties.

Plaintiff has filed an affidavit in connection with these motions from which it appears that the agreement of November 20, 1940 was formally terminated by plaintiff by a notice dated April 28, 1948. It would appear also from this affidavit that there is some suggestion that the contract may have been rescinded by the conduct of the parties as early as April, 1943. Plaintiff argues that these facts show an abandonment or cessation of the improper use of the patent, if any such existed, so that the patent is now enforceable.

Without deciding at this point whether plaintiff has or has not purged itself by cancelling or in some other way terminating the contract, it seems reasonably clear that it could only recover royalties under the agreement of November 20, 1940 for the period during which that agreement was in force, and that the agreement contained the condemned restrictive covenant as long as it was in force. Recovery of royalties under the agreement is therefore barred for the whole term of its existence by reason of its unenforceability.[11]

Defendants' motion for summary judgment as to the first cause of action of the amended complaint will accordingly be granted.

### Motion for Summary Judgment on Fourth Cause of Action of Amended Complaint

This motion is directed to the cause of action alleging infringement of plaintiff's patent. It is bottomed on the same theory as the similar motion with respect to the first cause of action, namely, that the plaintiff cannot maintain its suit for patent infringement because of the misuse of its patent.

It has already been found that there was a misuse of plaintiff's patent. However, the question arises whether or not the plaintiff has ceased misusing its patents and has

---

10. Certain statements of the Supreme Court in Transparent-Wrap Mach. Corp. v. Stokes & Smith Co., 329 U.S. 637, 641, 67 S.Ct. 610, 91 L.Ed. 563, suggest that even such a showing as this may not be necessary.

11. Chicago Metallic Mfg. Co. v. Edward Katzinger Co., 329 U.S. 394, 67 S.Ct. 416, 91 L.Ed. 374.

now removed the disability to prosecute its suit for patent infringement.

■ No facts regarding the cancellation of the agreement of November 20, 1940 or pertaining to the cessation of the patent misuse appear in the amended complaint. However, the affidavits filed by both sides indicate, at the least, that there is an issue as to the facts relating to the question of the cessation of the patent misuse and the dissipation of its consequences, if· any. While it may be true, as is argued by defendants, that there is no clear and positive showing by the plaintiff of the dissipation of the possible consequences of the patent misuse, I am of the opinion that the granting of the motion for summary judgment with respect to this cause of action in the face of the existence of an issue of fact affecting the right of the plaintiff to maintain and prosecute its patent infringement suit is not permitted under Rule 56. This court cannot attempt to decide this issue now,[12] and summary judgment cannot, therefore, be granted.

■ Defendants make further objections to the fourth cause of action on the ground that it does not directly charge infringement of plaintiff's patent, and is stated as an alternative claim. That the fourth cause of action charges infringement of plaintiff's patent is quite clear from a reading of the amended ·complaint. The statement of a claim in the alternative is expressly sanctioned by Rule 8(e) (2). At this stage of the case, when the entire rights of the plaintiff may not be apparent, this cause of action based on infringement, even though stated as an alternative to a claim which is held to be unenforceable, should not be summarily adjudged.

Defendants' motion for summary judgment on the fourth cause of action of the amended complaint will be denied.

### Motion to Dismiss the Third Cause of Action Under Rule 12(b) (6)

The third count or cause of action of the amended complaint seeks to recover damages for the failure of defendants to exploit diligently the patent invention under the terms of the agreement of November 20, 1940, or to the fullest extent. Defendants move to dismiss the complaint as to this cause of action, for three reasons: (1) under the license agreement defendants were obligated to exploit the patent only to the extent specified therein and not to the fullest extent; (2) plaintiff's remedy for the failure of the defendants to exploit is provided in the license agreement, namely, the termination thereof; (3) the license contract is against public policy, and is therefore unenforceable.

■ Having been required by my understanding of the Lockwasher case to determine that the license contract of November 20, 1940 was in violation of public policy and unenforceable, I am of the opinion that it necessarily follows that the plaintiff cannot maintain a suit to recover for defendant's failure to exploit the patent any more than it can to recover royalties. Defendant's obligation to exploit could only have arisen by virtue of the existence of the contract; and the duration of that obligation could only have been commensurate with the term of the contract. If the plaintiff is barred from recovering for the breach of contract arising from the failure to pay royalties, he must likewise be barred from recovering for the alleged breach of contract arising from the failure to exploit. Whether the extent of the obligation to exploit is to be measured by the specific terms of the contract, or whether some more far-reaching obligation to exploit may be implied by virtue of the existence of the license contract, it is unnecessary to decide. The obligation, whatever its scope, could only have existed because of the contract, and the contract being in violation of public policy, the obligation to exploit the subject matter of the contract cannot be enforced, nor can damages be recovered for its breach.

Defendants' motion to dismiss the third cause of action will be granted.

---

12. See Hart & Co. v. Recordgraph Corp., 3 Cir., 169 F.2d 580.

Defendants' Motions to Strike Certain
Paragraphs of the Amended Complaint
as to the First and Third Causes of
Action

The decision of the court on the motion for summary judgment as to the first cause of action and on the motion to dismiss the third cause of action makes these motions to strike moot. As a matter of form, the motions to strike will, therefore, be denied, but with leave to the defendants to renew such motions if that should be necessary in the interest of eliminating from the complaint any allegations which are plainly and unequivocally immaterial to the cause or causes of action which may ultimately remain in the case for disposition.

An order in accordance with this opinion may be submitted.