F. C. RUSSELL CO. v. COMFORT EQUIPMENT CORP. et al.

No. 49 C 130.

United States District Court N. D. Illinois, E. D.

Feb. 20, 1951.

Davis, Lindsey, Hibben & Noyes, Chicago, Ill., for plaintiff.

Casper W. Ooms, Dawson, Ooms, Booth & Spangenberg, Chicago, Ill., for defendant.

HOLLY, District Judge.

In this action plaintiff charges defendant with infringing Ensminger patent No. 2,-262,670 for a combination storm and screen window. The Hunter Manufacturing Corporation was not found in this District for service of process and the suit proceeded against the Comfort Equipment Corporation, its distributor.

Plaintiff's patent is for a combination of a storm and screen window. One of the objects of the patentee Arthur A. Ensminger was to provide a combination which might be permanently installed and so constructed as to easily permit the removal of the glass panels used in winter time and insert screen panels for summer use. Another object was to provide an arrangement which would permit installation of a single standard size of a factory made rigid frame that could be made to fit a range of sizes of window openings, such as distorted or out of square window opening and would be adjustable to the expansion, contraction or distortion of the window aperture.

Ensminger accomplishes his purpose, plaintiff's counsel say, by a simple arrangement of a very few cooperating parts. It comprises a rigid panel receiving frame made up of four rigidly connected side and transverse hollow metal bars, each having opposite flat interior and exterior side faces. Each of the sheet metal channel-shaped members has a base portion for engaging and sealing with a wall of the building aperture and a pair of spaced resilient side flanges with inturned edge portions for embracing and slidably engaging the flat inner and outer side faces of the frame member on which it is mounted.

Each sealing member extends the full length of the frame bar upon which it is mounted, and each end of each sealing member overlaps and slidably receives the corresponding end of the adjacent sealing member at the corners of the rigid frame. The sealing members are connected with the rigid frame but are independently adjustable relative thereto for sidewise and angular movement in the plane of the rigid frame.

The sealing members are held in place against the walls of the building aperture by means of mounting screws which extend through each of the flanges of the channel member, avoiding the frame, and into the blind stop of the building aperture. These mounting screws hold the sealing channels against the walls of the building aperture and apply a clamping pressure to the flanges of the channels and thereby hold the rigid frame in place.

The main functioning relationships between the principal parts of the structure are, as stated by counsel in his brief, as follows:

The panel receiving frame is embraced by the resilient flanges of the sealing channels, with the inturned edges of the sealing channels, both during and after installation, slidably and frictionally engaging the

opposite, flat, inner and outer faces of the panel receiving frame with a yielding pressure.

The screw secures the sealing channel in place against the side of the window casing and the blind stop in tight sealing relation with both, and also has clamping effect on the sealing channel to increase the grip of its flanges on the frame.

The frame is thus mounted in the window aperture by frictional clamping engagement with the flanges of the sealing channel, which sealing channel in turn is permanently, positively and securely mounted in the window aperture by the screws. The panel receiving frame has connection with the window aperture only by way of the red sealing channel and thus "floats" within the channel.

Each of the elements cooperates with each of the other elements in producing this functional relationship between them.

Defendant's structure is essentially like plaintiff's except that a new sealing arrangement has been provided for the top corners. If plaintiff's patent is valid I think it is infringed by defendant.

Counsel for plaintiff say in their brief that the Ensminger invention belongs to that class of inventions known as new combinations of elements which, cooperating together, provide new functional relationships of the parts and thereby improve upon an old result or produce a new and beneficial result.

But I do not think that the elements of plaintiff's patent operating together provide new functional relationship of all the parts.

The evidence shows that for many years channel shaped members have been used to enclose structural units in buildings so that these units did not have to be snugly fitted into the openings but certain tolerances could be permitted. This is what Ensminger accomplishes in his structure by the use of the channel members. Others have shown the same sort of construction for screen doors and windows. See Carroll patent No. 1,189,790, Paige patent No. 1,287,409 and Holiday patent No. 1,583,977.

Also before Ensminger devised his form of screen others had made windows with interchangeable panels for screen or glass. See Paige patent, supra, and an earlier Ensminger patent No. 2,013,824 which was designed to be hung on the outside of the window but with panels removable from the inside of the room so that the change from screen to glass or glass to screen could be easily made. The Biddle patent No. 2,156,964 also provides for changing panels without removing the frame.

The elements in plaintiff's device are all old; they do not perform any new or different function in the combination than they perform out of it. In Great Atlantic & Pacific Co. v. Super Market Equip. Corporation, 340 U.S. 147, 71 S.Ct. 127, 130, Mr. Justice Jackson said: "A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

We have the same situation here. I must hold the patent invalid.

## II.

Defendant challenges also plaintiff's right to relief in this case because of its alleged abuse of its patent.

Plaintiff has a large sales and distributing force, probably the largest in its line in the United States. It has forms of sales and distribution contracts which all handlers of its products are required to sign. Distributors were required to sign contracts containing the following provisions. "Second Party shall at all times during the life of this agreement use its best efforts to promote the sales within the aforesaid territory. It will, at all times, display, in its salesroom or office, suitable samples and displays of said windows for sales demonstration purposes. Second Party further agrees to maintain an ade-

quate sales organization devoted exclusively to the sale of said windows, and further agrees not to merchandise or offer for sale any merchandise which would be competitive with any articles, items or merchandise manufactured and/or distributed by the First Party, without the written approval of the First Party."

In another agreement which provided that the distributor shall service windows which were not properly installed or failed to comply with plaintiff's warranty in other respects this provision was inserted. "The Distributor agrees to purchase all materials necessary for the manufacture of special units from the Company, such as paint, screen cloth and miscellaneous items, glass excepted. The distributor further agrees to rigidly follow the Company's specifications covering the manufacture of said units. This applies particularly to the painting requirements for Rusco *baked-on* Outdoor enamel. Any deviation will release the Company from any liability hereunder."

The dealer's agreement which recites that the dealer is not the agent of either plaintiff or the distributor contains the following provisions. "Dealer hereby accepts the franchise and agrees to make all sales hereunder in accordance with this agreement. Dealer further agrees to work and develop the aforementioned territory to the satisfaction of the Distributor, and not to sell any other storm windows."

These provisions of the contracts would disentitle plaintiff to the relief he seeks even if his patent were vaild. A patentee under a valid patent has a monopoly in the manufacture and sale of the patented product. One monopoly is enough. If he attempts to limit competition further by such tying in clauses as we have here the courts will not protect his monopoly. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 788, 62 S.Ct. 402, 86 L.Ed. 363; Mercoid Corporation v. Mid Continent Co. 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed 376. The provisions in the dealer's contract requiring him to purchase special materials necessary for the manufacture of special units such as paint, screen cloth and miscellaneous items, except glass, and mentioning especially Rusco baked-on enamel from plaintiff brings the case squarely within the principle announced in the Morton Salt case.

Plaintiff's complaint will be dismissed.