**F. C. RUSSELL CO.**

v.

**CONSUMERS INSULATION CO.**
No. 36–53.

United States District Court
D. New Jersey.
Feb. 18, 1954.

Stryker, Tams & Horner, by William L. Dill, Jr., Newark, N. J., William C. McCoy, Cleveland, Ohio, of counsel, for plaintiff.

Benjamin Stadtmauer, Garfield, N. J., Maxwell James, New York City, of counsel, for defendant.

MEANEY, District Judge.

The parties to the instant suit have stipulated that the issue of misuse of the patent in suit be determined by the court on briefs submitted by the parties. The charge of "misuse" is set forth in paragraph numbered 12, but really 13, of the answer, and alleges that the plaintiff required "its dealers and distributors of windows purportedly made under said patent not to merchandise or offer for sale any merchandise which would be competitive with any articles, items or merchandise manufactured and/or distributed by plaintiff, and requiring distributors to buy non-patentable material from the plaintiff to be used in the assembling and installation of its patented structures." During the course of discussion on the argument of a motion and pre-trial proceedings held on October 2, 1953, both counsel agreed that in the event the court found that there had been no such misuse as is urged by the defendant, the trial could proceed as to the other matters involved in the suit; but that if the court found misuse, the instant suit would be effectively discontinued after grant by the plaintiff to the defendant of a royalty free, irrevocable, non-exclusive license for the life of the patent in suit and any reissue thereof.

Both parties to the suit stipulated the admissibility into evidence of facts and exhibits set forth mainly in the transcript of the record in the United States Court of Appeals for the Seventh Circuit in the case of F. C. Russell Company v. Comfort Equipment Corporation, 7 Cir., 194 F.2d 592, with its exhibits and printed material, and further the interrogatories and requests for admissions with the answers and replies thereto, filed in this case.

A review of the pertinent features of this suit inclines the court to the belief that its findings must ultimately depend on the answer to the question of whether or not the plaintiff in the use of its patent monopoly has gone beyond the purpose and limits of the protection given by the patent.

That question is to be answered by consideration of certain agreements entered into by the plaintiff with its distributors and through them by indirection with their dealers. It is admitted that the alleged invention is involved in the plaintiff's storm and screen windows called "Rusco", "Cinco", "Thermoseal" and "Cinco-Thermoseal". The plaintiff further admits it had agreements with at least twenty-three "Thermoseal" distributors and thirty-two "Cinco-Thermoseal" distributors as set forth on page 270 et seq. of defendant's exhibit 1 in the instant suit; that it had agreements with at least seventy-six "Rusco" distributors substantially as set forth on page 279 et seq. of said exhibit; and that it had agreements with twenty-three "Cinco" distributors and thirty-two "Cinco-Thermoseal" distributors substantially as set forth on page 288 et seq. of that exhibit.

Without attempting to set forth in full the terms of these agreements, it will suffice to indicate those provisions thereof which the defendant claims constitute

such restrictive agreements as to justify the charge of misuse. Each of the agreements contains the following provision in Article IV:

"IV. Second Party shall at all times during the life of this agreement use its best efforts to promote the sales within the aforesaid territory. It will, at all times, display, in its salesroom or office, suitable samples and displays of said windows for sales demonstration purposes. Second Party further agrees to maintain an adequate sales organization devoted exclusively to the sale of said windows, and further agrees not to merchandise or offer for sale any merchandise which would be competitive with any articles, items or merchandise manufactured and/or distributed by the First Party, without the written approval of First Party."

There is a further pertinent provision included in an agreement relating to the "Rusco" product set forth in defendant's exhibit 1 at page 298, which reads as follows:

"The Distributor agrees to purchase all materials necessary for the manufacture of special units from the Company, such as paint, screen cloth and miscellaneous items, glass excepted. The Distributor further agrees to rigidly follow the Company's specifications covering the manufacture of said units. This applies particularly to the painting requirements calling for Rusco baked-on outdoor enamel. Any deviation will release the Company from any liability hereunder."

What remains to be noted with respect to alleged restrictive agreements is contained in the Agreement on page 299 in defendant's exhibit 1.

"Dealer hereby accepts the franchise and agrees to make all sales hereunder in accordance with this agreement. Dealer further agrees to work and develop the aforementioned territory to the satisfaction of Distributor, and not to sell any other storm windows."

This form of agreement concededly was furnished by the plaintiff to its distributors.

The vice of these agreements lies in the attempt to restrict or suppress competition by an improper use of the patent monopoly. It is settled law that public policy requires that the monopoly of a patent be strictly limited to the terms of the statutory grant. Morton Salt Co. v. G. S. Suppiger Co., 1942, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363. Any attempt to extend the monopoly is improper regardless of the means used for such extension. The Court of Appeals for the Third Circuit in the case of National Lockwasher Co. v. George K. Garrett Co., 1943, 137 F.2d 255, held that provisions somewhat similar to those set forth in the licensing agreements in the instant case established misuse. And in an analogous situation (Park-In Theatres v. Paramount-Richards Theatres, D.C.Del.1950, 90 F.Supp. 730, affirmed per curiam 3 Cir., 1950, 185 F.2d 407) the court arrived at a similar conclusion.

Under all the circumstances this court is in accord with the findings set forth in the opinion of Judge Holly in the case of F. C. Russell Company v. Comfort Equipment Corporation, (the printed transcript of the record of which is defendant's exhibit 1 in the present suit) reported in D.C.N.D.Ill.1951, 97 F. Supp. 784, affirmed in 1952 by the Court of Appeals for the Seventh Circuit in 194 F.2d 592. There would seem unquestionably to exist in the case at bar a conflict in which the plaintiff must be denied relief because of its misuse of its patent.

The argument of the plaintiff that its distributor agreements cover only windows manufactured under a particular trademark to which that particular agreement relates, seems to the court to be without merit. At best it is an attempt to circumvent the limitation placed on the patent monopoly which is the real basis for the distributors' agree-

**122**

ments. Again this court reverts to the rule that "the particular form or method by which the monopoly is sought to be extended is immaterial." These agreements are patently not prepared on any other basis than the patents on which the instant suit was brought. With reference to the allegation of control of the resale price of the patented article, there does not appear to be any attempt to fix prices, but merely to set a maximum or ceiling price. This does not seem to be such a practice as to be injurious to the public welfare and constitute a misuse of the patent monopoly in violation of public policy.

Maximum price setting by the plaintiff at the time would seem in this instance to have been an attempt to furnish an additional preventive against sale of a commodity at a figure above the then legally fixed maximum. But whatever the motive, the result under these circumstances did not constitute misuse of the patent.

Let an order be submitted in conformity with these findings and the stipulation of counsel above referred to.